# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:08-CR-28-TS |
| | ) | |
| DEON SANDERS | ) | |

## OPINION AND ORDER

This matter is before the Court on the Defendant's Motion to Suppress [DE 22], filed on July 3, 2008.

## BACKGROUND

On March 26, 2008, the Government filed a three-count Indictment against the Defendant, charging him with violations of 21 U.S.C. § 841(a)(1) for possessing with intent to distribute crack cocaine, 18 U.S.C. § 924(c) for carrying a firearm during and in relation to a drug trafficking crime, and 21 U.S.C. § 841(a)(1) for possessing with intent to distribute crack cocaine.

On July 3, the Defendant filed a Motion to Suppress [DE 22], seeking the suppression of all evidence obtained from the initial detention during a January 23, 2008, traffic stop, and any and all other evidence gained subsequent to this seizure as the fruits of an illegal search. On August 8, the Government filed an Opposition [DE 29] to the Defendant's Motion. On October 7, the Court conducted an Evidentiary Hearing on the Defendant's Motion. The Defendant was present in the courtroom with his attorney, Robert W. Gevers, II. The Government was represented by Assistant United States Attorney Robert Trgovich. At the hearing, the Government presented two witnesses, Officers Chris Hoffman and Nicholas Lichtsinn of the Fort

Wayne Police Department, and the Court received as evidence an in-car video, two traffic tickets, a tow and inventory form, the Fort Wayne Police Department's Motor Vehicle Tow and Inventory Policy, and a November 12, 2003, Memorandum from the Fort Wayne Police Department, Chief of Police. At the conclusion of the hearing, the Court gave the parties additional time to file briefs.

On December 5, the Defendant filed a post-hearing Memorandum in Support [DE 32] of his Motion. On January 7, 2009, the Government filed an Opposition [DE 33] to the Defendant's Memorandum in Support. On February 19, the Defendant filed a Memorandum in Response [DE 36] to the Government's Opposition.

**FINDINGS OF FACT**

Upon consideration of the testimony of the witnesses and the exhibits admitted during the Evidentiary Hearing, the Court makes the following findings of fact.

Officer Chris Hoffman has been a patrol officer with the Fort Wayne Police Department for approximately six years. For about one year, he has been assigned duties associated with interdicting serious violent crimes and individuals with firearms. Officer Nicholas Lichtsinn has been an officer with the department for three years.

On January 23, 2008, in the late evening hours, the officers were in a squad car following a 2003 black Grand Am being driven by the Defendant. The officers observed the Defendant's vehicle rolling through stop signs and without a license plate light. They followed the vehicle for a period of time, finally stopping the vehicle at the Defendant's parents' house. The officers did not stop him earlier because the roads were slick with ice and snow. The Defendant provided

Officer Hoffman with his driver's license, which Officer Hoffman gave to Officer Lichtsinn. The Defendant was unable to provide valid proof of insurance. The insurance card provided was for a different vehicle, and it was expired. Officer Hoffman asked the Defendant if he knew who his insurance carrier was, and he did not know. The Defendant received tickets because the license plate did not have a functioning light on it and because there was no proof of financial responsibility. (*See* Gov't's Ex. 2.) Under the Fort Wayne Police Department's Motor Vehicle Tow and Inventory Policy, vehicles that are stopped and lack proof of financial responsibility (i.e., proof of valid insurance) are deemed unsafe vehicles and are towed. (*See* Gov't's Exs. 4 & 5.) Nevertheless, officers do have some discretion in making decisions to tow vehicles.

After the Defendant could not provide valid proof of insurance, the officers had a conversation in the squad car. Using the Defendant's driver's license, Officer Lichtsinn ran a check for warrants, driving status, and prior criminal incidents. The search showed that the Defendant had no outstanding warrants for his arrest, that he had a valid driving status, that he was not a suspect in any recently committed crime, and that there was no indication to bring him in for questioning. The search also showed that the Defendant had a criminal history that included carrying a handgun without a license, that he did not have a permit to carry a handgun, and that he had been assigned an alert for having been armed during prior incidents with law enforcement. The officers did not observe the Defendant commit a misdemeanor or a felony offense in their presence, and they had no information that the Defendant had recently been involved, outside their presence, in criminal activity.

While still in the squad car, Officer Lichtsinn decided to tow the vehicle, and Officer Hoffman indicated that he was going to get the Defendant out of the vehicle. Officer Hoffman

testified that his purpose for getting the Defendant out of the vehicle was his prior involvement with firearms, the party-armed alert, and the lack of valid insurance. The narrative report concerning the incident written by Officer Lichtsinn indicates that the Defendant was asked to exit the vehicle so that the vehicle could be inventoried for towing.

Officer Hoffman approached the vehicle from the driver's side, and Officer Lichtsinn from the passenger's side. As Officer Hoffman approached the vehicle to remove the Defendant, his suspicion was heightened because the Defendant was "reaching about the car, all over, he seemed extremely nervous about me asking him to get out of the car." (Tr. 12.) In addition to reaching around the interior/passenger compartment of his vehicle, the Defendant refused to get out of the vehicle, despite being asked "numerous times" and "multiple, multiple times." (Tr. 30, 35.) Officer Hoffman asked him six to eight times to get out of the car, and the Defendant responded by honking the vehicle's horn. In Officer Hoffman's experience, honking the horn is a method suspects use to alert people to make a scene, and Officer Hoffman's concern for officer safety was heightened further by the Defendant's honking of the horn. Officer Hoffman expressed his concern that the Defendant may have been attempting to retrieve a gun from the car or from his person. After the Defendant refused multiple requests to get out of the vehicle, Officer Hoffman opened the door, directed the Defendant more forcefully to exit the vehicle, and told him to stop reaching around in the passenger compartment. Officer Hoffman thought he would have better control of the Defendant if he could physically hold onto him outside the vehicle. Meanwhile, as Officer Lichtsinn observed the Defendant refuse Officer Hoffman's requests and honk the horn, he became concerned and went to the driver's side of the vehicle to assist Officer Hoffman. Several factors prompted Officer Hoffman to pat down the Defendant

4

immediately after removing him from the vehicle: the Defendant's nervous appearance, his reaching around the interior of the vehicle, his refusal to get out of the car, and his sounding of the car horn, and his refusal to show his hands. Additionally, Officer Hoffman had to open the door to get the Defendant removed from the vehicle. According to the testimony presented at the Evidentiary Hearing, these circumstances made Officer Hoffman and Officer Lichtsinn concerned for officer safety.

Once the Defendant was under control outside his vehicle and had been patted down, Officer Lichtsinn returned to the passenger's side of the vehicle and began to look into the area of the vehicle within the Defendant's reach. The Defendant was acting very nervous and odd, and he was rigid and did not want to bend. Officer Hoffman had to physically manipulate him to lean up against the Defendant's car. In Officer Hoffman's experience, suspects who remain rigid and try to stay in a vertical position may being preparing to flee on foot. Officer Hoffman noticed that the Defendant was perched on his elbows and watching Officer Lichtsinn closely as he opened the glove box. When Officer Lichtsinn opened the center console between the driver's seat and the passenger's seat, he discovered a handgun (a .45 caliber Colt pistol), and the Defendant stated that it was his "dad's gun." (Tr. 13.) Upon discovery of the firearm, Officer Lichtsinn said, "Code 62," which is a code for firearm. (Tr. 13.) The handgun had a round in the chamber and was ready to fire.

After the gun was discovered, Officer Hoffman and Officer Lichtsinn placed handcuffs on the Defendant. Officer Hoffman continued to search the Defendant, believing that the Defendant was under arrest for possession of a handgun. In the Defendant's inner left coat pocket, he found a vile containing eleven small, off-white rocks that field-tested positive for

cocaine, and he found a baggie containing a green, leafy substance that field-tested positive for marijuana. He then stated "white and green," which is code for cocaine and marijuana. (Tr. 13.)

When the Defendant's mother arrived at the scene, Officer Hoffman discussed with her the towing of the vehicle. Officer Hoffman learned that the vehicle was hers, that she was disabled, and that her husband had recently been released from the hospital for throat cancer. As a consequence, Officer Hoffman "softened up. She seemed like a nice woman and it sounded like they had some personal issues going on." (Tr. 15.) Although Officer Hoffman was considering not towing the vehicle and eventually decided against towing, Officer Lichtsinn (without Officer Hoffman's knowledge) had already called for the tow truck, was filling out the City of Fort Wayne Tow and Inventory Form, (Gov't's Ex. 3), and had already completed the inventory. Officer Lichtsinn testified that he decided to tow the vehicle because there was no proof of insurance. The Tow and Inventory Form indicates that the reason the vehicle was towed was that the driver was arrested. The officers persisted in Officer Lichtsinn's decision to tow the vehicle, but Officer Hoffman permitted the Defendant's mother to remove some items from the vehicle. While Officer Hoffman was talking with the Defendant's mother, Officer Lichtsinn was completing the inventory and the booking slip.

Officer Lichtsinn advised the Defendant of his *Miranda* rights after the Defendant was secure in the rear of the squad car. After being read his *Miranda* rights, the Defendant made incriminating statements, telling Officer Lichtsinn that the gun was his, that he had recently bought it from someone at a liquor store for $250, that the marijuana was for personal use, but that the crack cocaine was not for personal use.

## CONCLUSIONS OF LAW

In seeking the suppression of evidence in this case, the Defendant appears to have no real issue with the officers stopping his vehicle or with them ordering him out of the vehicle. Observing that "[t]raffic violations give police the necessary probable cause to stop a vehicle," (Def.'s Mem. in Response 4, DE 36 (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 322 (2001)), he notes that the officers observed him rolling through stop signs and having no license plate light on his vehicle. He also acknowledges that, "[o]nce a valid traffic stop has been initiated, an officer may order the driver out of the vehicle." (Def.'s Mem. in Response 5, DE 36 (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977).)

It is what the officers did after he was removed from the vehicle that is the basis of the Defendant's Motion to Suppress. He argues that there was no reasonable suspicion to search him or his vehicle absent an inventory search of the vehicle and that there are reasonable grounds to believe that Officer Lichtsinn conducted the search of the vehicle (which resulted in the discovery of the handgun) based on a mistaken belief that reasonable suspicion existed rather than pursuant to an inventory search. The Defendant notes that it is the discovery of the firearm that created the basis to search the Defendant pursuant to arrest and that the search pursuant to the arrest yielded the cocaine and marijuana. Of course, the Defendant's incriminating statements were made after he was arrested, placed in the rear of the squad car, and advised of his *Miranda* rights. Thus, the Defendant's argument comes down to claims that the stop, although reasonable in the beginning, extended beyond the scope necessary to fulfill the purpose of the initial seizure and that Officer Lichtsinn's discovery of the firearm occurred during an unlawful search of the passenger compartment.

The Fourth Amendment of the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. When police officers stop an automobile and detain the occupants briefly, the stop amounts to a seizure within the meaning of the Fourth Amendment. *Whren v. United States,* 517 U.S. 806, 809–10 (1996). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* at 810; *see also Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."). Additionally, a police officer may as a matter of course order the driver of a lawfully stopped car to exit his vehicle. *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977). However, "a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005).

Where police have reasonable suspicion to believe an occupant of the car is hiding or accessing a weapon, they may conduct a protective search of the passenger compartment so long as the search is limited to those areas in which a weapon may be placed or hidden. *United States v. Arnold*, 388 F.3d 237, 239 (7th Cir. 2004). To determine whether reasonable suspicion exists, a court examines "the totality of circumstances known to the police at the time of the stop, including the experience of the officers and the behavior and characteristics of the suspect." *United States v. Lawshea*, 461 F.3d 857, 859 (7th Cir. 2006). Reasonable suspicion is less than probable cause, but more than a hunch. *United States v. Grogg*, 534 F.3d 807, 810 (7th Cir.

2008). It is a "commonsense, nontechnical" concept that deals with "the factual and practical consideration of everyday life on which reasonable and prudent men, not legal technicians, act." *Ornelas v. United States*, 517 U.S. 690, 695 (1996) (internal quotations marks omitted). "The Fourth Amendment's reasonableness requirement strikes a balance between an individual's interest in being left alone and the public's interest in community safety, crime control, and the safety of law enforcement officers engaged in the work of protecting the public and investigating crime." *United States v. Jennings*, 544 F.3d 815, 819 (7th Cir. 2008).

The Defendant's actions gave the officers reasonable suspicion to perform further reasonable investigation and to perform a protective search. *See United States v. Martin*, 422 F.3d 597, 602 (7th Cir. 2005) (stating that information obtained during the time necessary to issue a traffic ticket "may provide the officer with reasonable suspicion of criminal conduct that will justify prolonging the stop to permit a reasonable investigation"). The Defendant argues that "[t]here was nothing in Mr. Sanders' physical appearance that indicated he had a weapon on his person when Officer Hoffman removed him from the vehicle, yet Officer Lichtsinn began a search of the car almost instantaneously as Officer Hoffman removed the Defendant from the vehicle and restrained him." (Def.'s Mem. in Response 5, DE 36.) He adds that "Officer Hoffman does not allege seeing anything about the Defendant's appearance that would indicate he was armed or imminently dangerous." (Def.'s Mem. in Response 5, DE 36.) The Defendant correctly notes that "reaching about the passenger cabin of a vehicle or furtive movements may provide reasonable suspicion to search for weapons within the vehicle." (Def.'s Mem. in Response 5, DE 36 (citing *United States v. Arnold*, 388 F.3d 237, 239-40 (7th Cir. 2004).) He urges that his actions of reaching around in his car can reasonably be explained by him

9

continuing to look for a proof of insurance card. (Def.'s Mem. in Response 6, DE 36.)

The actions of the Defendant in reaching around in the passenger compartment cannot be viewed in isolation, but must be examined in light of all the factors known to the police. *See United States v. Figueroa-Espana*, 511 F.3d 696, 703 (7th Cir. 2007) (holding that even if an innocent explanation exists for individual factors taken separately, reasonable suspicion may arise when the factors are taken together); *United States v. Zambrana*, 428 F.3d 670, 675 (7th Cir. 2005) (stating that a court cannot evaluate and reject each factor in isolation from other factors); *see also United States v. Arvizu*, 534 U.S. 266, 277 (2002) ("A determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct"). When considering the totality of the Defendant's conduct after the officers checked the database for warrants, driving status, and prior incidents with law enforcement and re-approached the Defendant's vehicle, the Court finds that the totality of the circumstances created a reasonable concern for officer safety and a reasonable suspicion that the Defendant was hiding or accessing a weapon. After learning that the Defendant had prior incidents involving the carrying a handgun without a license, that he did not have a permit to carry a handgun, and that he had been assigned an alert for having been armed in prior incidents with law enforcement, the officers observed the Defendant reaching around in the passenger compartment, but they also observed him refuse repeated orders to exit the vehicle, repeatedly honk his horn to draw attention to the scene, and act very nervously. They had to remove him from the vehicle. He also maintained a rigid stance and resisted bending over against the vehicle. When viewed in the totality of the circumstances, the Defendant's conduct caused the officers to have a reasonable concern that he might have a weapon and that their safety was threatened. Thus, the officers were lawfully authorized to

conduct a protective pat down of the Defendant and a protective search of the passenger compartment. The protective search of the passenger compartment was limited to those areas in the passenger compartment (including the glove compartment and the center console) in which a weapon could be placed or hidden.

Once the handgun was discovered and the Defendant was arrested for carrying the gun without a permit, the search of the Defendant that resulted in the discovery of drugs was a search incident to his arrest. Searches incident to arrests are valid in order to find weapons and to search for and seize any evidence on the arrestee's person in order to prevent concealment and to preserve evidence for trial. *United States v. Thomas*, 512 F.3d 383, 387 (7th Cir. 2008). For these reasons, the Defendant's request to suppress the evidence obtained during the search relating to the January 23, 2008, traffic stop and arrest of the Defendant will be denied.

The Defendant's argument that the incriminating statements he made to Officer Lichtsinn when he was secure in the rear of the squad car should be suppressed are dependent on the January 23, 2008, search and arrest being unlawful. Because the Court has found that pat-down search, the search of the passenger compartment, and the subsequent search of the Defendant incident to his arrest did not violate his Fourth Amendment rights, his request to suppress his incriminating statements will also denied.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion to Suppress [DE 22] is DENIED. By a separate notice, the Court will schedule a telephone status conference to schedule a final pretrial conference and trial.

SO ORDERED on March 20, 2009.

                                                   s/ Theresa L. Springmann
                                                  THERESA L. SPRINGMANN
                                                  UNITED STATES DISTRICT COURT